36 C.C.P.A. (Patents)

**Application of EVANS et al.**
**Patent Appeal No. 5518.**

United States Court of Customs
and Patent Appeals.
March 7, 1949.

Clarence M. Fisher, of Washington, D. C. (Roger T. McLean, of New York City, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting, as unpatentable over the prior art, claims 1 to 7, inclusive, which are all of the claims in appellants' application for a patent for a method for plasticizing scorched rubber stock.

Claims 1 and 3 are representative, and read as follows:

"1. The method of plasticizing scorched stock which comprises admixing therewith acidic material and a substantially non-accelerating, plasticizing organic sulfur compound, permitting the resulting admixed material to stand and subsequently subjecting the same to a refining treatment."

"3. The method of plasticizing scorched stock which comprises mechanically working the same under oxidizing conditions with admixed acid material and a plasticizing sulfide having the formula $RS_xR'$ where R and R' represent radicals selected from the class consisting of hydrocarbon radicals and hydrocarbon radicals substituted by a non-accelerating functional group and where x is an integer."

The references relied upon are:

Shepard et al., 1,957,298, May 1, 1934.
Seaman et al., 1,996,001, Mar. 26, 1935.
Williams et al., 2,191,266, Feb. 20, 1940.
Garvey, 2,193,624, Mar. 12, 1940.
Castello, 2,211,592, Aug. 13, 1940.

Appellants state in their brief:

"The invention of the appealed claims provides a method for cool working of scorched rubber stock in the presence of an acidic material and a non-accelerating platicizing organic sulfur compound followed by standing and/or cooling to 'age' the mixture and a final reworking refining step. The result is a reconverted product closely approximating the properties of properly mixed and compounded rubber. The process is characterized by the use of an organic sulfur compound, which is *not* an accelerator, under process conditions of *acidity* and low temperature. The process is further characterized by a period of standing *i. e.*, cooling, to allow the added agents to become distributed before final refining." [Italics quoted.]

The plasticizing agents disclosed by appellants for use in their process are "non-accelerating and nitrogen-free sulfides and thio compounds of hydrocarbons and substituted hydrocarbons or hydrocarbon derivatives such as thiophenols or mercaptans, thio ethers or sulfides, etc." The acid materials disclosed by appellants for use in their process are "the higher fatty acids such as oleic and stearic acids," but the appellants state that rosin acids may also be used.

The Shepard et al. patent provides for a process of treating scorched rubber, and teaches that processes heretofore used in treating vulcanized rubber to obtain reclaimed rubber can be used to treat scorched rubber; also, that scorched rubber stocks "have been salvaged by the usual alkali or acid digestion processes or other so-called devulcanization methods of the reclaiming industry."

The Seaman et al. patent discloses the use of organic sulfides of the type employed by appellants for the softening or reclaiming of vulcanized rubber. It teaches that the vulcanized rubber may also be macerated and then treated directly with disulfides, and that this treatment may be accelerated by the use of elevated temperatures.

The Williams et al. patent provides for mixing the rubber with small amounts of acidic material and salts of thio acids. The salts include organic sulfides of the type described and claimed by appellants. The patent states that the compounds used will be effective at room temperature, although higher temperatures are preferred.

The Garvey patent shows a process for reclaiming vulcanized rubber by mixing the rubber with para thiocresol, one of the sulfur compounds used in appellants' process. It also shows other ingredients, including lauric acid, as being used, and that the composition is cured at 275° F. (135° C.)

The Castello patent shows a method of reclaiming vulcanized rubber in which the rubber is mixed with an organic sulfur compound and an organic acid, including stearic acid, "at low or medium mill temperatures."

The examiner rejected all of the claims as unpatentable over Seaman et al., Williams et al., Garvey, or Castello, as well as Seaman et al., Garvey, or Castello in view of Shepard et al.

Claims 1, 3, 4, 5, 6, and 7 were further rejected as being broader than the invention alleged.

The examiner additionally rejected claims 1, 2, 5, 6, and 7 as being too broad and indefinite; however, the board in its decision held that the examiner's rejection of those claims as too broad and indefinite as to "non-accelerating plasticizing organic sulfur compound" was based on the allegation that some of the compounds "may" be inoperative, and it did not affirm that rejection, citing Ex parte Johnson, 40 USPQ 576, and Ex parte Rintleman, 43 USPQ 283, which held that rejections on mere suspicion of inoperativeness are untenable.

It will be noted that appellants' process provides for mixing scorched rubber with a higher fatty acid and a suitable plasticizing agent. Numerous suitable plasticizing agents are mentioned, all of which are organic sulphur compounds, but excluding organic sulphur compounds containing nitrogen, which would be regarded as accelerators.

The Castello patent states:

" * * *. Organic materials which have the property of accelerating the vulcanization of rubber are all peptizing agents and the activity of the material as a peptizing agent seems to be directly proportional to its accelerating activity."

That indicates the use of these compounds as accelerators.

■ We do not agree with the board that the appellants' limitation of their plasticizers to non-accelerating organic sulphur compounds, in view of Castello's accelerating organic compounds, is "purely arbitrary." The Castello patent is chiefly of interest here, however, because of its teaching that a fatty acid (stearic acid) and organic sulphur compounds may be used in the reclamation of vulcanized rubber. Castello also teaches the use of relatively low temperatures (100° F.) in his reclaiming process..

■ The Garvey patent discloses the use of "a thiophenol" (the term being defined in the patent as being used in a generic sense to include aromatic mercaptans) as a reclaiming agent, together with a softener such as "oils" in the manufacture of reclaimed rubber. The examiner held that "oils" customarily used in the art are "fatty oils consisting essentially of fatty acids." Appellants contend that the term "oils" as part of the Garvey teaching is too nebulous to be used against them. However, we take notice of the fact that the chemical meaning of "oils" is as expressed at page 204, Karrer's Organic Chemistry, Elsevier Publishing Co. Inc., Third English Edition, Amsterdam, 1947:

"Fats and oils. The fats and oils are entirely glycerides, i. e. esters of the trihydric alcohol glycerol with *higher and middle fatty acids.* * * *" [Emphasis added.]

Therefore, it will be seen that Garvey's disclosure embraces certain of the very materials upon which appellants' method is based; viz., thiophenol, aromatic mercaptans, used in connection with fatty acids.

Appellants' basic contentions before us are: (1) That none of the patents cited teaches the equivalence of scorched rubber and vulcanized rubber as the subject matter of the reclaiming art directed to vulcanized rubber scrap; (2) that none of the patents cited incorporates the appellants' step of a waiting period following the preliminary mixing treatment of the stock, and preceding the refining of the product, which appellants' application asserts is advantageous in promoting the plasticizing action of the added fatty acid and plasticizer.

As to the first contention, appellants in their brief state: "The phenomenon of scorching may be considered a premature partial vulcanization but scorched stocks

are in general distinguished in the rubber industry from vulcanized rubber." The solicitor in his brief states: "Scorched rubber, therefore, is intermediate in its nature between raw rubber and completely vulcanized rubber, and is more closely related to each of these two than they are to each other." Appellants' application states: "During the mixing, calendering or tubing of rubber compounds, and particularly of compounds containing active accelerators, it sometimes happens that the heat generated or applied during the mixing, calendering or tubing operation is sufficient to start or cause vulcanization and to produce what is known as scorched stocks, which are unsuitable for use."

It is our view that scorched rubber is prematurely or partially vulcanized rubber, and there is no invention in applying to scorched rubber (prematurely or partially vulcanized rubber) methods or compounds old to the art as useful in reclaiming vulcanized rubber. We are of the opinion that the case of In re Evans, 164 F.2d 621, 35 C.C.P.A., Patents 776, is controlling on that issue, and we agree with the board that it is not inventive to try the treatments of Garvey or Castello on scorched rubber.

With regard to the appellants' second contention, while it is true, as they state, that none of the references discloses an intermediate waiting step between the mixing and the refining steps, nevertheless we do not believe that appellants have distinguished their process from the others in a patentable way merely because of the introduction of the interval wherein the mixture is allowed to "stand."

Shepard et al. suggest the possible equivalence of vulcanized rubber reclamation and scorched rubber reclamation; Williams et al. teach the mixing of raw rubber with acidic material and organic sulfides, In re Evans, supra, extends this to the plasticizing of rubber generally; Seaman et al. teach the use of organic sulfides on vulcanized rubber to soften and reclaim it; Castello teaches the use of relatively low temperatures in reclaiming vulcanized rubber stock with a mixture of organic sulphur compounds (albeit accel-

erating) and an organic acid; and Garvey teaches the use of certain of the very softeners and plasticizers specified in appellants' application. In the face of all of this, will the appellants, in using what seems to be the fruits of those teachings, be heard to say that they are entitled to a patent because their application alone specifies a waiting period intermediate the processing of the scorched rubber stock? Where appellants have failed to establish clearly and conclusively a basis for the need of such a waiting period, its suggested desirability is not sufficient to distinguish the appellants' process as patentable over the prior art. As held by the board, "no basis has been laid * * * for a need for waiting. Mere standing for an unspecified time is practically meaningless."

For the foregoing reasons we agree with the finding of the tribunals of the Patent Office that all of the claims of appellants' application are unpatentable over the cited prior art. It is unnecessary for us to consider additional grounds of rejection. The decision of the Board of Appeals is affirmed.

Affirmed.